IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| ROBERT L. ALLUM, | CV 19-12-BU-BMM-KLD |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATION |
| STATE OF MONTANA, MONTANA STATE FUND, DEPARTMENT OF LABOR, ANNA PUDELKA, MELISSA QUALE, ESQ., THOMAS E. MARTELO, ESQ., WILBUR PINO, M.D., and DOES 1-100, inclusive, | |
| Defendants. | |

Pro se Plaintiff Robert Allum brings this action against the above-named Defendants alleging federal constitutional claims under 42 U.S.C. § 1983 and statutory claims arising from the handling of his claim for workers' compensation benefits. Defendants move for summary judgment on all claims set forth in the Amended Complaint. (Doc. 56). For the reasons set forth below, Defendants' summary judgment motion should be granted and this matter should be dismissed.

I.  **Background**

On November 18, 2013, Allum suffered an on-the-job injury to his right knee. (Doc. 57 at ¶ 1; Doc. 62 at ¶ 1). Defendant Montana State Fund accepted liability for Allum's injury. (Doc. 57 at ¶ 2; Doc. 62 at ¶ 2). On December 13,

2013, Montana State Fund began paying Allum temporary partial disability benefits and temporary total disability benefits, respectively, depending on whether he was working at a given time, in accordance with the Montana Workers' Compensation Act ("the Act"), Mont. Code Ann. § 39-71-101 et seq. (Doc. 11 at ¶ 4; Doc. 62 at ¶ 3).

On May 4, 2018, Allum's treating physician, Dr. Martin Gelbke determined that Allum had reached maximum medical improvement, and recommended that Allum undergo an impairment evaluation with Dr. Royce Pyette. (Doc. 57, at ¶ 4; Doc. 62 at ¶ 4). In mid-August 2018, Montana State Fund sent Allum a letter informing him that an impairment evaluation with Dr. Pyette was scheduled for September 6, 2018. (Doc. 57 at ¶ 5; Doc. 62 at ¶ 5). Allum subsequently contacted Montana State Fund Claims Examiner Defendant Anna Pudelka, and told her that his treating physician's assistant recommended that the impairment evaluation be cancelled due to Allum's ongoing knee pain. Pudelka cancelled the impairment evaluation. (Doc. 57 at ¶ 6; Doc. 62 at ¶ 6). Following a determination by Dr. Gelbke that Allum had reached maximum medical improvement as of September 20, 2018, Pudelka arranged with Treasure State Occupational Health to reschedule Allum's impairment evaluation. (Doc. 57 at ¶ 7; Doc. 58-3 at 4).

Allum informed Pudelka and Montana State Fund that he wanted to videotape his impairment evaluation, and Pudelka advised him that whether he

could do so was within the discretion of the healthcare provider. (Doc. 57 at ¶¶ 8-9). On October 24, 2018, Montana State Fund sent Allum a letter informing him that an impairment evaluation with Dr. Pyette was scheduled for November 9, 2018. (Doc. 57 at ¶ 10; Doc. 62 at ¶ 10). Allum notified Treasure State Occupational Health that he intended to videotape his impairment evaluation. Following a review of the medical record and correspondence, Dr. Pyette declined to conduct the impairment evaluation. (Doc. 57 at ¶ 13; Doc. 58 at ¶ 16; Doc. 62 at ¶ 13).

Treasure State Occupational Health advised Pudelka that it could schedule Allum for an impairment evaluation with Defendant Dr. Willbur Pino, but made clear that videotaping would not be allowed. (Doc. 58-8 at 1). After speaking with Allum, Treasure State Occupational Health informed Pudelka that he would object to an impairment evaluation without videotaping. (Doc. 58-9).

In a letter dated November 9, 2018, Montana State Fund advised Allum that his temporary total disability benefits would be terminated fourteen days later pursuant to the Act because he "failed to comply with the following recommended medical treatment: Failure to attend impairment rating requested by Dr. Gelbke." (Doc. 58-10). Allum telephoned Pudelka to dispute the termination of his benefits on the ground that Dr. Pyette had cancelled the impairment evaluation and indicated that he would attend an impairment evaluation if Treasure State

Occupational Health stated in writing that videotaping would not be permitted. (Doc. 57 at ¶ 16). Pudelka passed that information on to Treasure State Occupational Health, which sent Allum a letter informing him that an impairment evaluation with Dr. Pino was scheduled for December 8, 2018 and that videotaping would not be permitted. (Doc. 57-11).

In late November 2018, Allum sent two letters to Montana State Fund disputing its determinations related to his workers' compensation claim, objecting to the impairment evaluation with Dr. Pino, reasserting his right to videotape the impairment evaluation, and alleging several violations of the Act. (Doc. 58-6; Doc. 58-12). On December 7, 2018, Montana State Fund attorney Defendant Melissa Quayle sent Allum a letter explaining the status of his claim, the need for an impairment evaluation, and that Treasure State Occupational Health's refusal to allow videotaping was in accordance with Montana law. (Doc. 58-13).

Allum did not attend the scheduled impairment evaluation with Dr. Pino on December 8, 2018. (Doc. 57 at ¶ 22; Doc. 62 at ¶ 22). Two days later, Montana State Fund sent Allum a letter informing him that it was terminating his temporary total disability benefits pursuant to the Act based on his to attend the impairment evaluation with Dr. Pino. (Doc. 58-14).

Because she understood that Allum had an impairment, Pudelka asked Treasure State Occupational Health to engage Dr. Pino to determine Allum's

impairment rating based on his medical records and to review alternative job analyses. (Doc. 57 at ¶ 24). Dr. Pino subsequently determined that Allum's whole person impairment rating was ten percent, and he unconditionally approved the alternative job analyses prepared by Montana State Fund's designated rehabilitation provider. (Doc. 57 at ¶ 25).

In letters dated December 19, 2018, Montana State Fund informed Allum (1) that his temporary total disability benefits were being terminated based on his "affirmation that [he would] not attend an impairment evaluation unless [he was] allowed to videotape or record audio for the appointment" (Doc. 58-17) and (2) that he was entitled to a permanent partial disability award based on Dr. Gelbke's determination that he had reached maximum medical improvement and Dr. Pino's determination that he had a ten percent impairment rating. (Doc. 58-18). Montana State Fund fully paid Allum temporary total disability benefits through January 24, 2019, and paid permanent partial disability benefits on a biweekly basis from December 28, 2018 through June 24, 2019 to satisfy the impairment award. (Doc. 58 at ¶ 30). Allum only cashed one of the checks that Montana State Fund sent in payment of his impairment award. (Doc. 58 at ¶ 30).

In July 2019, Allum filed a petition for hearing with the Montana Workers' Compensation Court seeking, among other things, review of the determination that he had reached maximum medical improvement and the termination of his

temporary total disability benefits. (Doc. 57-1). In October and December 2019,

filed petitions for a writ of supervisory control with the Montana Supreme Court,

both of which were denied. (Docs. 57-4, 57-5, 57-6, 57-7). Following a trial, the

Workers' Compensation Court issued a decision finding that Allum was not

entitled to temporary total disability benefits or additional permanent partial

disability benefits, and was not entitled to a penalty in his favor against Montana

State Fund. (Doc. 57-8). Allum appealed to the Montana Supreme Court, claiming

that the Act violates the Montana Constitution. Allum did not allege any error with

respect to his workers' compensation benefits or penalty. (Doc. 57-9). On June 16,

2020, the Montana Supreme Court issued a decision affirming the judgment of the

Workers' Compensation Court.[1] (Doc. 64-1). On June 25, 2020, Allum petitioned

the Montana Supreme Court to reconsider its June 16, 2020 opinion. (Doc. 65).

Allum commenced this action in February 2019 – approximately five

---

[1] On January 29, 2020, Allum filed a motion for reconsideration of the Court's order denying his motion for a preliminary injunction or, alternatively, a motion to stay proceedings in the Workers Compensation Court and "certify the constitutional question" regarding the Act for appeal. (Doc. 50). That motion should be denied as moot in light of Montana Supreme Court's recent decision (Doc. 64-1) and this Findings and Recommendation.

On February 25, 2020, Allum filed a "Motion for Permission to File, the Petition for Writ of Mandamus, In Forma Pauperis and Accompanying Affidavit." (Doc. 54). That motion should be denied as moot in light of the Ninth Circuit's Order denying Allum's petition for writ of mandamus (Doc. 60) and this Findings and Recommendation.

months before he filed his petition for a hearing with the Workers' Compensation Court. (Doc. 1). Allum amended his complaint once as a matter of course, alleging six claims for relief against Defendants State of Montana, Montana State Fund, Montana Department of Labor and Industry, Anna Pudelka, Melissa Quayle, and Thomas Martello. (Doc. 14). In Counts 1 and 2, Allum advances claims under 42 U.S.C. § 1983, alleging that Defendants violated his substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution while handling his workers' compensation claim. (Doc. 14 at 23-44). In Count 3, Allum alleges Defendants violated his right of privacy under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the Montana Uniform Health Care Information Act (UHCIA).[2]  (Doc. 14 at 44-47). Allum seeks compensatory damages, punitive damages, litigation costs, and declaratory and injunctive relief. (Doc. 14 at 60-61). Defendants move for summary judgment on all claims.

## II.   <u>Legal Standards</u>

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material

---

[2]  The Court has previously dismissed Count 2 for failure to state a claim to the extent it alleges an equal protection violation under § 1983. (Doc. 38). The Court has also dismissed Counts 4 and 5 for failure to state a claim for relief, and Count 6 for lack of jurisdiction. (Doc. 38).

fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255;

*Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

In general, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986). This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987). Nevertheless, in the summary judgment context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt. *Erickson v. Pardus* 551 U.S. 89, 94 (2007); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

## III.   <u>Discussion</u>

### A.   **Sovereign Immunity**

Defendants State of Montana, Montana Department of Labor and Industry, and Montana State Fund argue they are immune from suit under the Eleventh Amendment, and that Allum's official capacity claims against Defendants Pudelka, Quale, Martello, and Pino are similarly barred. Defendants are correct.

"'The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (quoting *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999)). This "jurisdictional bar applies regardless of the nature of relief sought and extends to state instrumentalities and agencies." *Krainski*, 616 F.3d at 967. While Congress may abrogate a State's sovereign immunity by statute, the United States Supreme Court has consistently held that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17 (1985). See also *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989).

Eleventh Amendment sovereign immunity "also shields state officials from official capacity suits." *Krainski*, 616 F.3d at 967. Under a narrow exception to this rule, federal courts may entertain "suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000).

Here, there is no evidence that Defendants have consented to suit in this case, and § 1983 does not abrogate their Eleventh Amendment immunity.[3] In his

---

[3] Allum also alleges claims under HIPAA and UHCIA. As discussed below, however, those claims fail as a matter of law because neither of those statutes provides for a private right of action.

Amended Complaint, Allum asks that he "be granted declaratory and/or injunctive relief for the constitutional challenges and such other and further relief as may be deemed just and proper in the premises." (Doc. 14 at 61). Although Allum does not specifically say so, any such declaratory or injunctive relief would relate to Defendants' allegedly wrongful conduct in handling his workers' compensation claim and therefore be retrospective in nature. While the Eleventh Amendment does not generally prohibit suits seeking prospective injunctive or declaratory relief, it immunizes officials from claims seeking such relief retrospectively. See e.g. *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985).

Allum argues that Mont. Code Ann. § 2-9-102, which addresses tort liability of governmental entities, waives the State's sovereign immunity from this suit. This statute provides that "[e]very governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature under Article II, section 18 of The Constitution of the State of Montana." Mont. Code Ann. § 2-9-102. But there is nothing in this statute suggesting that the State has waived its immunity from suit in federal court. The Ninth Circuit and courts in this District have consistently held that the State of Montana does not waive Eleventh Amendment immunity from suit in federal court by consenting to suit in state court. See e.g. *Montana v. Peretti*,

661 F.2d 756, 759 (9th Cir. 1981) (holding that Article II, section 18 of the Montana Constitution and Montana statute providing that the state shall be liable on its contracts do not constitute consent to suit in federal court); *Engebretson v. Mahoney*, 2010 WL 2683162 *1 (D. Mont. June 30, 2010) ("Montana has not waived its immunity to suit in federal court for tort actions.").

Because Defendants have not consented to suit in federal court and Congress has not abrogated their Eleventh Amendment immunity, the State of Montana, Montana Department of Labor and Industry, and Montana State Fund are entitled to summary judgment on all claims. Allum's official capacity claims against Defendants Pudelka, Quale, Martello, and Pino are similarly barred by the Eleventh Amendment.

To the extent Allum alleges § 1983 claims against Defendants Pudelka, Quale, Martello, and Pino liable in their individual capacities,[4] Defendants argue they are entitled to summary judgment because Allum has not come forward with any evidence that they deprived him of his constitutional rights.

**B.      Section 1983 Claims (Counts 1 and 2)**

---

[4]  See *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (recognizing that the Eleventh Amendment does not bar suit seeking damages against state officials in their individual capacities).

To prevail on a claim under 42 U.S.C. § 1983, "a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990). In Counts 1 and 2 of the Amended Complaint, Allum alleges that Defendants, acting under color of state law, violated his rights under the due process clause of the Fourteenth Amendment while handling his workers' compensation claim.

The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV, § 1. This clause provides a basis for both substantive and procedural due process claims. For purposes of either type of claim, the threshold consideration is whether the plaintiff has been deprived of a protected interest in property or liberty. *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). "Only after finding the deprivation of a protected interest" does the court "look to see if the State's procedures comport with due process." *American Manufacturers*, 526 U.S. at 59.

Defendants argue they are entitled to summary judgment on Allum's claims under § 1983 because the undisputed evidence of record demonstrates that they did not violate his right to substantive or procedural due process.

       1.    <u>Substantive Due Process (Count 1)</u>

In Count 1, Allum claims Defendants violated his right to substantive due process under the Fourteenth Amendment while handling his Workers' Compensation claim. (Doc. 14 at 23-35). Generally speaking, Allum alleges Defendants violated his substantive due process rights by (1) accepting treating physician Dr. Gelbke's opinion that he had reached maximum medical improvement; (2) requiring that Allum attend an impairment evaluation without allowing him to videotape it or otherwise providing for "supervision or independent verification" of the evaluation; (3) terminating his temporary total disability benefits, and; (4) accepting the results of Dr. Pino's medical records review and finding that Allum's whole person impairment rating was ten percent. (Doc. 14 at 23-29).

To prevail on a substantive due process claim under § 1983, a plaintiff must demonstrate the (1) deprivation of a protected life, liberty, or property interest; and (2) that the defendant engaged in "conduct that 'shock[s] the conscience and offend[s] the community's sense of fair play and decency.'" *Regents of the University of California v. U.S. Department of Homeland Security,* 908 F.3d 476, 514, 518 (9th Cir. 2018).

For purposes of the first requirement, the Court will assume that Allum has a protectible property interest in his Workers' Compensation benefits. With respect to the "shocks the conscience" requirement, Count 1 of the Amended Complaint is

replete with allegations that Defendants acted "knowingly, willfully, wantonly, and with malice of forethought." (Doc. 14 at ¶¶ 108-111, 113-115, 19). Allum also alleges in Count 1 that Defendants acted "for the purpose of intimidating, isolating PLAINTIFF from medical providers, harassing, and conducting economic warfare against PLAINTIFF, with the goal of delaying PLAINTIFF's access to the judicial process, with competent jurisdiction." (Doc. 14 at ¶ 112). While Count 1 can arguably be read as alleging that Defendants deprived him of workers' compensation benefits in such a way that shocks the conscience, Allum has not come forward with any evidence to support his allegations of such egregious conduct. To the contrary, as described above in the background section, the undisputed evidence demonstrates that Defendants (1) promptly paid Allum workers' compensation benefits following his workplace injury; (2) continued to pay temporary total disability benefits pending resolution of Allum's stated objection to undergoing an impairment evaluation without being allowed to videotape it, and; (3) paid Allum all benefits to which he was entitled under the Act. Because Allum has not identified sufficient evidence from which a reasonable jury could conclude that Defendants deprived him of workers' compensation benefits in such away that shocks the conscience, Defendants are entitled to summary judgment on Allum's substantive due process claim as set forth in Count 1 of the Amended Complaint.

2.   Procedural Due Process (Count 2)

In Count 2, Allum claims Defendants violated his right to substantive due process under the Fourteenth Amendment while handling his workers' compensation claim. (Doc. 14 at 23-35). Allum alleges several procedural irregularities in the handling of his workers' compensation claim, including for example: (1) improperly relying on treating physician Dr. Gelbke's opinion that Allum had reached maximum medical improvement (Doc. 14 at ¶ 151); (2) providing him with false and misleading written statements (Doc. 14 at ¶ 154); (3) requiring that he undergo an impairment evaluation that "is fraudulently conducted in secrecy and ambiguity, without written guidelines, regulations, and/or protocols and with no impartial observers or electronic recording devises [sic] (impartial documentation) allowed" (Doc. 14 at ¶ 153); and (4) improperly relying on Dr. Pino's "fraudulent document" assessing his whole person impairment rating.

To succeed on a procedural due process claim, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.3d 898, 904 (9th Cir. 1993)). Fundamentally, procedural due process requires "some kind of notice" and "some kind of hearing" before the State

can deprive a person of life, liberty, or property. *Zinermon v. Burch*, 494 U.S. 113,

127-28 (1990).

Even assuming the first two requirements are satisfied, the undisputed

evidence demonstrates that Allum received the procedural due process to which he

was entitled in connection with the handling of his workers' compensation claim.

As the facts set forth in the background section above reflect, Defendants provided

Allum with multiple written notices of the State Fund's intent to terminate his

temporary total disability benefits based on his failure to attend an impairment

evaluation, and gave him multiple opportunities to participate in such an evaluation

before finally terminating his benefits. (Doc. 57 at ¶¶ 15-23). Defendants also

engaged a healthcare provider to assess Allum's impairment rating based on

available medical records and determined that he was entitled to an impairment

award under the Act. (Doc. 57 at ¶¶ 24-26). Defendants paid Allum temporary total

disability benefits and the impairment award in accordance with the determinations

made under the Act. (Doc. 57 at ¶ 27). Allum petitioned the Montana Workers'

Compensation Court for review in accordance with the procedures set forth in the

Act. (Doc. 57 at ¶¶ 28-29). Following a two-day trial during which Allum and

Montana State Fund both had the opportunity to present argument and evidence,

the Workers' Compensation Court issued a decision affirming Defendants' benefit

determinations. (Doc. 57-8). Allum appealed that decision to the Montana Supreme

Court as allowed by the Act. See Mont. Code Ann. § 39-72-2904 (providing for direct appeal from Workers' Compensation Court decisions to the Montana Supreme Court). On June 16, 2020, the Montana Supreme Court issued a decision affirming the judgment of the Workers' Compensation Court. (Doc. 64-1).

While Allum argues the process he received was deficient, he has not come forward any evidence demonstrating that Defendants violated the Act. To the contrary, the undisputed evidence of record demonstrates that Allum received the procedural process due him under the Act, and that Defendants thus satisfied Allum's due process rights. For these reasons, Defendants are entitled to summary judgment on Allum's procedural due process claim as set forth in Count 2 of the Amended Complaint.

## C.    Statutory Claims (Count 3)

In Count 3, Allum alleges Defendants violated his right of privacy under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. §§ 1320d, et. seq., and the Montana Uniform Health Care Information Act (UHCIA), Mont. Code Ann. 50-16-501 et. seq. (Doc. 14 at 44-47). Defendants move for summary judgment on the ground that neither of these statutes creates a private right of action.

The Ninth Circuit has consistently held that "HIPAA itself provides no private right of action." *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078,

1081-82 (9th Cir. 2007). See also *Garmon v. County of L.A.*, 828 F.3d 837, 847 (9th Cir. 2016); *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009). Accordingly, Allum cannot maintain a § 1983 claim alleging HIPAA violations. See e.g. *Kittel v. City of Oxnard,* 2019 WL 1578369 *3 (C.D. Cal. Feb. 5, 2019); *Nickler v. County of Clark*, 752 F. App'x 427, 429 n. 1 (9th Cir. 2018).

By its terms, UHCIA applies only to "a health care provider, an individual who assists a health care provider in the delivery of health care, or an agent or employee of a health care provider." Mont. Code Ann. § 50-16-525. For purposes of UHCIA, a "health care provider" means "a person who is licensed, certified, or otherwise authorized by the laws of this state to provide health care in the ordinary course of business or practice of a profession." Mont. Code Ann. § 50-16-504(7). Allum has not alleged or produced any evidence suggesting that any Defendant is a health care provider or otherwise equired to comply with UHCIA, and thus he cannot maintain a claim under UHCIA.

Accordingly, Defendants are entitled to summary judgment on Count 3 of the Amended Complaint.

### D.    **Constitutional Challenges**

Although the Amended Complaint does not contain a distinct claim for relief that the Act itself is unconstitutional, Allum presents several "Constitutional Challenges" in the introductory section of his pleading. (Doc. 14 at 6-23).

Assuming these general allegations could be liberally construed as a separate claim for relief challenging the constitutionality of the Act, any such claim is barred by the doctrine of res judicata in light of the Montana Supreme Court's recent decision on Allum's appeal.[5]

The Montana Supreme Court noted that Allum did not allege error regarding his workers' compensation benefits; rather, he asserted the Act violates the Montana Constitution. (Doc. 64-1 at 2). Notwithstanding the fact that "Allum was advised numerous times by the [Workers' Compensation Court] on the process for bringing a constitutional challenge," he did not raise a constitutional challenge in the Workers' Compensation Court. (Doc. 64-1 at 2). Because Allum did not raise a constitutional challenge in the Workers' Compensation Court, the Supreme Court considered the issue waived and declined to address the constitutionality of the Act. (Doc. 64-1 at 2).

When applying res judicata to a state court decision, federal courts "'give the same preclusive effect to [that] judgment as another court of that State would give,' meaning that [federal courts] apply res judicata as adopted by that state." *Adam. Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1148 (9th

---

5 A court may raise res judicata sue sponte in the interest of judicial economy. See e.g. *Headwaters, Inc. v. United States Forest Service*, 399 F.3d 1047, 1054-55 (9th Cir. 2005); *Neal v. First American Title Ins. Co.*, 2019 WL 6771809 *2 (N.D. Cal. Dec. 12, 2019).

Cir. 2010) (quoting *Parsons Steel, Inv. v. First Ala. Bank*, 474 U.S. 518, 523

(1986)). Under Montana law, the doctrine of res judicata, or claim preclusion, bars

a party from re-litigating "a claim once final judgment has been entered." *Wiser v.*

*Montana Board of Dentistry*, 251 P.3d 675, 676 (Mont. 2011). Once a final

judgment has been entered, res judicata applies if the following elements are

satisfied:

> (1) the parties or their privies are the same; (2) the subject matter of the
> present and past actions is the same; (3) the issues are the same and relate to
> the same subject matter; (4) the capacities of the parties are the same [in
> reference] to the subject matter and the issues between them.

*Wiser*, 251 P.3d at 677. Res judicata applies not only to issues that were actually

litigated, but precludes "claims that were or could have been litigated in the first

action." *Brilz v. Metropolitan General Ins. Co.,* 285 P.3d 494, 500 (Mont. 2012).

These elements are all satisfied here. The Montana state court action

involved the same parties or their privies, Allum could have raised a constitutional

challenge in the Workers Compensation Court but did not do so, and the Montana

Supreme Court's decision on Allum's appeal constitutes a final judgment on the

merits. Accordingly, to the extent Allum raises a constitutional challenge to the

Act in this action, any such claim is barred by res judicata.

## IV.   <u>Conclusion</u>

For reasons set forth above,

IT IS RECOMMENDED that Defendants' Motion to for Summary

Judgment (Doc. 56) be GRANTED, Allum's Motion for Reconsideration (Doc. 50) and Motion for Leave to File Petition for Writ of Mandamus (Doc. 54) be DENIED as moot, and this case be DISMISSED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 10th day of July, 2020.

Kathleen L. DeSoto
United States Magistrate Judge